UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD MARTIN,

                              Petitioner,                7:13 Civ. 6803 (KMK) (PED)

              - against -
                                                         **REPORT AND
                                                         RECOMMENDATION**
ADA PEREZ,

                              Respondent.


**TO THE HONORABLE KENNETH KARAS, UNITED STATES DISTRICT JUDGE:**


## I. INTRODUCTION

On July 6, 2011, Petitioner Richard Martin ("Petitioner" or "Defendant") was convicted in New York State County Court, Westchester County of driving while intoxicated and sentenced to one to three years imprisonment. On November 21, 2012 the Appellate Division, Second Department, unanimously affirmed the conviction. People v. Martin, 100 A.D.3d 930 (2d Dep't 2012). On May 16, 2013 petitioner was released from Gowanda Correctional Facility to parole.

Presently before this Court is Petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This petition is before me pursuant to an Order of Reference dated January 7, 2014. (Dkt. 6). For the reasons set forth below, I respectfully recommend that Your Honor deny the petition in its entirety.


## II. BACKGROUND[1]

### A. The Accident and Arrest

---

[1] Unless otherwise indicated, the information within this section is gleaned from the instant petition (Dkt. 1), Respondent's Affidavit in Opposition (Dkt. 10) ("Resp. Aff."), Respondent's Memorandum of Law and Exhibits (Dkt. 11) ("Resp. Opp.") and Petitioner's Reply (Dkt. 12).

At approximately 2:30 am on June 13, 2010, Tennesha Lynch was stopped at a red light on her way home to Mount Vernon when a car swerved toward her from the opposite direction, crossed the double yellow lines, and grazed the left side of her car.  (T. 275-76, 293-94, 491-502, 508-11).[2]  Although Lynch tried to alert the other driver that he had sideswiped her, he continued to drive away.  (T. 503).  Lynch turned around and followed the vehicle, which was leaning to the left and had car parts hanging onto the ground, for about a mile to a gas station where she parked and reported his license plate number to 911.  (T. 295, 300-01, 317-19, 503-05, 527-28).  When Lynch approached the driver, later identified as Petitioner, to inform him that he had struck her car, he fled the gas station.  (T. 295, 298-300, 504-06, 527-28).  Lynch followed him to Mount Vernon and flagged down on-duty police officer Jeffrey Muendel of the Mount Vernon Police Department. (T. 301-05, 417-24, 506-07).  Officer Muendel pulled petitioner over and observed that his car was damaged and that he appeared "highly intoxicated."  (T. 426-27, 430-32).  Petitioner denied that he had been drinking and that he had been in any accident.  (T. 430-31).

Officer Muendel attempted to administer field sobriety tests to petitioner and detained him until an Alcosensor test could be brought to the scene.  (T. 432).  Officer Mario Stewart, a certified breath analyst operator for DataMaster, arrived to administer a field Alcosensor test and observed that petitioner was intoxicated.  (T. 339-41, 383-84).  Officer Stewart testified that he administered the field Alcosensor test to petitioner, which revealed a .197 blood alcohol content.  (T. 385).  Petitioner denies that the test was ever administered.  (Dkt. 1).

Petitioner was placed under arrest for driving while intoxicated and was brought to police

_____

[2] Numbers preceded by the letter "T." refer to pages from the trial transcript.

headquarters.  (T. 433-34).  Officer Stewart testified that he administered refusal warnings to Petitioner three times in the holding area of the cell block and that Petitioner refused to submit to a chemical blood alcohol test.  (T. 344-46, 434-35).  Petitioner claims he was never given any such warnings.  (Dkt. 1).

**B.      Pre-Trial Proceedings**

Petitioner was arraigned in the Mount Vernon City Court for the felony of driving while intoxicated and for operating a motor vehicle left of an official marking in violation of N.Y. Vehicle and Traffic Law § 1126(a).  (Resp. Opp. at 7).

On March 24, 2011, in response to an omnibus petition from Petitioner, the Westchester County Court found, *inter alia*, that there was no legal basis to provide Petitioner with grand jury minutes.  (Resp. Opp. Ex. 3 at 2).

**C.      Trial**

In his opening statement at trial, the prosecutor described Petitioner's refusal to submit to a blood alcohol test after his arrest, but did not mention that the police administered a field Alcosensor test to Petitioner at the scene.[3]  (T. 264).  In his opening, however, defense counsel informed the jury that Officer Muendel requested that Petitioner "take a little screening test," but Officer Muendel was unable to "figure out how to work the machine."  (T. 270).  Defense counsel argued that Petitioner was arrested because he became "aggravated" and "ha[d] a few words" with the officer, not because he was intoxicated.  (Id.).

---

[3]  Under New York law, AlcoSensor results are not admissible to prove intoxication,  See People v. Thomas, 121 A.D.2d 73, 76, 509 N.Y.S.2d 668 (4th Dep't 1986), aff'd, 70 N.Y.2d 823, 517 N.E.2d 1323 (1987), but can be admitted if the adverse party "opens the door" by presenting evidence or argument which would otherwise mislead the factfinder.  See People v. Massie, 2 N.Y.3d 179, 180-81 (2004).

3

On cross examination of Officer Stewart, defense counsel elicited that Stewart had been called to the scene of Petitioner's arrest to administer the Alcosensor test, because Officer Muendel could not do so.

> DEFENSE COUNSEL: [W]ere you called [to the scene of the arrest] because . . . Officer Muendel couldn't figure out how to work some equipment?
>
> STEWART: Yes
> * * *
> DEFENSE COUNSEL: Mr. Martin was cooperative from your observation, was he not?
>
> STEWART: Yes, he consented to a field Alcosensor test.

(T. 352-53).

Out of the presence of the jury, the prosecutor argued that this line of questioning, as well as defense counsel's opening argument, had opened the door to evidence regarding the administration and results of the Alcosensor test. (T. 364-69). The court agreed, reasoning that it would be misleading for the jury to learn about the administration of the Alcosensor test without hearing the results of the test, and ruled that the prosecutor would be allowed to question Officer Stewart on the results of the Alcosensor during redirect examination. (T. 370-71). Additionally, the court indicated that it would provide the jury with curative instructions. (T. 371). On redirect, Officer Stewart testified that he administered the Alcosensor test to Petitioner and that it produced a result of .197, which was above the legal limit of .08. (T. 385).

The prosecutor then called Officer Jeffrey Muendel, who testified that he waited "until an Alcosensor came on scene" before arresting Petitioner. (T. 433). The prosecutor instructed Officer Muendel continue his testimony "without discussing that at all" (Id.). Officer Muendel proceeded to testify that Petitioner refused to submit to a test at police headquarters despite receiving refusal warnings. (T. 434-36).

4

On cross-examination, Officer Muendel was questioned concerning a supporting deposition he prepared in connection with Petitioner's arrest, on which he improperly failed to document Petitioner's Alcosensor reading.  (T. 470-72).

At a sidebar requested by defense counsel, the Court informed defense counsel that questioning Officer Muendel about whether Petitioner consented to the field Alcosensor test was "at his own peril," warning counsel that such questioning may open the door to Muendel's testimony revealing the results of the AlcoSensor test.[4]  (T. 470, 487).

Defense counsel then questioned Officer Muendel regarding Petitioner's consent to the test used at the scene of the accident.

> DEFENSE COUNSEL: And there's one test that refers to a breath test; what is that referring to?

> OFFICER MUENDEL: Consented to such test which administered within two hours of Petitioner arrest witnessed by detective [sic] and showed to have a blood content of.

> THE COURT: Now you're asking what was the test.  What was that test?

> OFFICER MUENDEL: The preliminary breath test, the PBT that was used on scene.

(T. 471).  Defense counsel questioned Officer Muendel regarding his attempts to administer the Alcosensor test to Petitioner, and Muendel testified that he had difficulty operating the device. (T. 472-73).  During redirect, the prosecutor asked whether Petitioner ultimately took the Alcosensor test at the scene.  (T. 480).  Muendel testified that Officer Stewart administered the test, and that the result indicated a .197 blood alcohol content, above the legal limit of .08.  (T.

---

[4]   The prosecutor recalled the substance of the sidebar conversation on the record, and defense counsel did not contradict the prosecutor's recollection.  (T. 487).

5

482-83).

**D.      Motion for Mistrial**

At the close of the prosecutor's case, the court denied defendant's motion for a mistrial

on the ground that testimony elicited from Stewart and Muendel regarding the legal limit of

intoxication was improper.  (T. 487-88).  The court told defense counsel that "the Alcosensor

would not have been admissible but for you keep bringing it up on your opening as well as your

cross-examinations.  You cannot bring up these issues of the Alcosensor and then try to limit it

for whatever is good in your case.  You've opened the door, as a matter of fact you've kicked the

door down in this Court's opinion regarding the Alcosensor."  (Id.).

**E.      Jury Charge, Verdict, and Sentencing**

With regard to the Alcosensor evidence, the Court charged the jury as follows: "You've

heard testimony that Police Officer Stewart administered an Alcosensor test to the Petitioner.

The results of the Alcosensor test is not recognized scientifically as a reliable measure of the

Petitioner's blood alcohol content, however, it may be considered by you as one of the factors

used by the officers to determine whether the Petitioner was intoxicated.  It may also be used to

assess the credibility of the witnesses during the course of trial."  (T. 723-24; 768-71).

The jury found Petitioner guilty of driving while intoxicated, and Petitioner was

sentenced to an indeterminate term of incarceration of one to three years.  (T. 799; S.8[5])

**F.      Direct Appeal**

Petitioner (by and through his appellate counsel, John R. Lewis), timely appealed his

conviction to the Appellate Division, Second Department on the ground that the trial court

---

[5]    Numbers preceded by the letter "S." refer to pages from the sentencing transcript.

committed reversible error when it admitted into evidence the results of an Alcosensor reading, a

scientifically unreliable test, and that appellant did not "open the door" to this testimony. (Resp.

Opp. Exh. 4).

By Decision and Order dated November 21, 2012 the Second Department affirmed

Petitioner's conviction. People v. Martin, 100 A.D.3d 930, 953 N.Y.S.2d 893 (2012). The

Appellate Division specifically held:

> The introduction of testimony regarding the results of a field breathalyzer test
> performed on the defendant did not constitute reversible error, because this
> testimony was elicited after defense counsel opened the door to the matter during
> opening statements and cross-examination. Moreover, any potential prejudice to
> the defendant was alleviated by the trial court's limiting instructions to the jury.

Id. (citations omitted).

Petitioner, by and through counsel, timely submitted an application for leave to appeal to

the New York Court of Appeals, wherein he again argued that the trial court committed

reversible error when it admitted into evidence the results of the Alcosensor reading as appellant

did not "open the door" to the testimony. (Resp. Opp. Exh. 6). Appellate counsel attached

copies of the briefs filed in the Appellate Division to his leave letter. (Id.). The Court of

Appeals denied leave to appeal on March 4, 2013. People v. Martin, 20 N.Y.3d 1101, 988

N.E.2d 535 (2013).

**G.     The Instant Petition**

Petitioner timely[6] filed the instant Petition for a Writ of Habeas Corpus on or about

_____

[6] See 28 U.S.C. § 2244(d)(1).

September 24, 2013.[7] The Petition sets forth the following grounds for habeas relief:

1. False Accusations at the Grand Jury proceeding. Officer Muendel stated at the Grand Jury hearing that Richard Martin travled [sic] addional [sic] blocks before being stopped and also that he acknowledge [sic] appellant proceed the wrong way down a one way street and later at Trail [sic] 'admitted' that his testimony was incorrect. Both officers Muendel and Steward from the Mount Vernon Police Department claimed that I refused the breathalizer [sic] test. But they're the ones who refused to produce a refuser report after they alledge [sic] that I refused. No breathlizer [sic]. No chemical test. No video to show how intoxicated I was as they both claim [sic] my reading from an Alcosenso [sic] was .197.

2. I was denied my right to obtain my grand jury minutes. It was also impossible for my lawyer. Theodore J. Brundege, to obtain as well so that we may better our case by making better preparation of an defense. The people have the wrong car and I wasn't drunk. My motion for discovery and inspection was all denied. These's [sic] Officers Muendel and Steward made fasle [sic] accusations knowing that they can navigate and manage a good lie because they're the law and I have a record. I never receive or may I say I was only giving but one street sobriety test. I wasn't staggering or unsteady on my feet. I never received a breathalizer [sic] or chemical test as required.

3. Captn Roy Hasting Commander Officer of the support service unit at the Mount Vernon Police Department provided that as part of his duties, hew as in charge of records, his main testimony was to explain why the vidio [sic] of the tape equipment as to the DWI warnings wasn't produced at trail [sic]. He testified that the DA office didn't ask him to preserve the vidio [sic] tape. And on cross neither could Officer Steward answer the question nor explain why. This case wasn't throughly [sic] investigated, if so they would realize that I couldn't have been in two places at one time. It was also said, by Officer Muendel I drove to the left over official marking double yellow lines, but I've a letter from the Department of Public Works stating that the striping of the lines and street was

---

[7] Although Petitioner was not incarcerated at the time of filing, he was in "custody" for purposes of bringing this petition because he was on parole. See Jones v. Cunningham, 371 U.S. 236 (1963). See also Baker v. Murray, 460 F. Supp. 2d 425, 428-29 (W.D.N.Y. 2006) ("Once a litigant's sentence has expired . . . 'some concrete and continuing injury other than the now-ended incarceration or parole-some 'collateral consequence' of the conviction-must exist if the suit is to be maintained.' . . . [T]he Supreme Court has 'been willing to presume that a wrongful criminal conviction has continuing collateral consequences' so that habeas petitions [of Petitioners whose sentences have expired] do not become moot after their release." (quoting Spencer v. Kemna, 523 U.S. 1 at 7, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998)).

under construction in June 2010.

4. The state used an Alcosensor reading of .197 as direct proof as to my intoxication. I was never giving a breathalizer [sic] or chemical test. But I did receive 3 years.

## III. <u>DISCUSSION</u>

### A. <u>Applicable Law</u>

"Habeas review is an extraordinary remedy." <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998) (<u>citing</u> <u>Reed v. Farley</u>, 512 U.S. 339, 354 (1994)).  Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the Petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the Petitioner's claim(s) in accordance with § 2254(d).  The procedural and substantive standards applicable to habeas review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are summarized below.

#### 1. Timeliness

The AEDPA established a one-year statute of limitations for the filing of a habeas corpus petition seeking relief from a state court conviction.  <u>See</u> 28 U.S.C. § 2244(d)(1).  The one-year limitation period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

9

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

The AEDPA's statute of limitations is tolled during the pendency of a properly filed application for state post-conviction relief, or other collateral review, of a claim raised in the petition. See id. § 2244(d)(2). The one-year limitation period is also subject to equitable tolling, which is warranted when a Petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation marks omitted), which have "prevented [the Petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (internal quotation marks and emphasis omitted). The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the Petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Id.

## 2. Exhaustion

A federal court may not grant habeas relief unless the Petitioner has first exhausted his

10

claims in state court.  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. §

2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the

applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an

absence of available corrective process; or (ii) circumstances exist that render such process

ineffective to protect the rights of the applicant"); id. § 2254(c) (the Petitioner "shall not be

deemed to have exhausted the remedies available in the courts of the State . . . if he has the right

under the law of the State to raise, by any available procedure, the question presented").  The

exhaustion requirement promotes interests in comity and federalism by demanding that state

courts have the first opportunity to decide a Petitioner's claims.  Rose v. Lundy, 455 U.S. 509,

518-19 (1982).

  To exhaust a federal claim, the Petitioner must have "fairly present[ed] his claim in each

appropriate state court (including a state supreme court with powers of discretionary review),

thereby alerting that court to the federal nature of the claim," and thus "giving the State the

opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Baldwin

v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted).  "Because

non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas

petition must put state courts on notice that they are to decide federal constitutional claims."

Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209,

221 (1982)).  Such notice requires that the Petitioner "apprise the highest state court of both the

factual and legal premises of the federal claims ultimately asserted in the habeas petition."

Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted).  To this end, the

Second Circuit has delineated a number of ways in which a Petitioner may fairly apprise the state court of the constitutional nature of his claim, including: "a) reliance on pertinent federal cases employing constitutional analysis, b) reliance on state cases employing constitutional analysis in like fact situations, c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation."  See Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011).

A habeas Petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).  However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."  Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted).  "In such a case, a Petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)."  Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991).  Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court.  See, e.g., Reyes, 118 F.3d at 139.  However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the Petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless."  Rhines v. Weber, 544 U.S. 269, 277

(2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

   *3. Procedural Default*

   Federal habeas corpus review of a state court's denial of a state prisoner's federal constitutional claim is barred if the state court's decision rests on an independent and adequate state procedural ground, unless the Petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional violation, or show "that failure to consider the claims will result in a fundamental miscarriage of justice." See Coleman v. Thompson, 501 U.S. 722, 750 (1991). See also Lee v. Kemna, 534 U.S. 362, 375 (2002); Dunham v. Travis, 313 F.3d 724, 729 (2d Cir. 2002). A procedural ground is "independent" if "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." See Harris, 489 U.S. at 263 (internal quotation marks omitted). A procedural bar is "adequate" if it is "based on a rule that is firmly established and regularly followed by the state in question." Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (internal quotation and citation omitted).

   In certain limited circumstances, however, "even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'" See Garvey v. Duncan, 485 F.3d 709, 713-14 (2d Cir. 2007) (citing Lee, 534 U.S. at 376). To this end, the Second Circuit has set forth the following "guideposts" for evaluating the adequacy of the state procedural bar in the context of "the

13

specific circumstances presented in the case, an inquiry that includes an evaluation of the

asserted state interest in applying the procedural rule in such circumstances":

> (1) whether the alleged procedural violation was actually relied on in the trial
> court, and whether perfect compliance with the state rule would have changed the
> trial court's decision; (2) whether state caselaw indicated that compliance with the
> rule was demanded in the specific circumstances presented; and (3) whether
> Petitioner had "substantially complied" with the rule given "the realities of trial,"
> and, therefore, whether demanding perfect compliance with the rule would serve
> a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee, 534 U.S. at 381-85).

*4. Standard of Review*

"[I]t is not the province of a federal habeas court to reexamine state-court determinations

on state-law questions.  In conducting habeas review, a federal court is limited to deciding

whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v.

McGuire, 502 U.S. 62, 68 (1991).  See 28 U.S.C. § 2254(a).  When reviewing petitions filed

subsequent to the AEDPA's effective date, a federal court may not grant habeas relief for any

claim adjudicated on the merits in state court unless the Petitioner establishes, in pertinent part,

that the state court decision "was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §

2254(d)(1).

A state court's decision is "contrary to" clearly established Federal law if (1) "the state

court arrives at a conclusion opposite to that reached by [the Supreme Court of the United

States] on a question of law" or (2) "the state court confronts facts that are materially

indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to

14

[that reached by the Supreme Court of the United States]." <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000). As to the "unreasonable application" prong, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 411. A state court decision involves an "unreasonable application" of Federal Supreme Court precedent if (1) "the state court identifies the correct legal rule from [Federal Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or (2) "the state court either unreasonably extends a legal principle from [Federal Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Id.</u> at 407. However, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 131 S. Ct. 770, 786 (2011) (citation omitted). In other words, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Id.</u> at 786-87.

Finally, under the AEDPA, the factual findings of state courts are presumed to be correct. <u>See</u> 28 U.S.C. §2254(e)(1); <u>see also</u> <u>Nelson v. Walker</u>, 121 F.3d 828, 833 (2d Cir. 1997). The Petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. §2254(e)(1).

**B.   <u>Exhausted Claim: Claim Four</u>**

As his fourth claim for habeas relief, Petitioner asserts that "the state used an Alcosensor reading of .197 as direct proof as to my intoxication.  I was never giving a breathalizer [sic] or chemical test.  But I did receive 3 years."   This claim was not raised *in haec verba*[8] in state court.  However, applying the generous interpretation to which *pro se* Petitioners are entitled, the Court construes this as a claim that the trial court erred in admitting the results of the Alcosensor reading into evidence because Petitioner did not "open the door" to the testimony, a claim which was presented to the state courts.

This claim does not raise any federal constitutional issue which is cognizable on habeas review.  See Underwood v. Kelly, 692 F.Supp. 146, 150 (E.D.N.Y.1988) ("Generally, erroneous evidentiary rulings by a state trial court do not constitute a basis upon which a writ of habeas corpus can be issued" (citations omitted)), aff'd without opinion, 875 F.2d 857 (2d Cir.1989).  For Petitioner's claim to be cognizable on habeas review, he would have to demonstrate that the trial court's admission of testimony regarding the Alcosensor results "violated an identifiable constitutional right," and, in doing so, Petitioner would "bear[ ] a heavy burden because evidentiary errors generally do not rise to constitutional magnitude."  Copes v. Schriver, No. 97 Civ. 2284 (JGK), 1997 WL 659096, at *3 (S.D.N.Y. Oct. 22, 1997).  Moreover, "[t]he introduction of improper evidence against a defendant" violates due process only if "the evidence 'is so extremely unfair that its admission violates fundamental concepts of justice.'"  Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir.1998); see also Chebere v. Phillips, No. 04 Civ. 296 (LAP), 2013 WL 5273796, at *27 (S.D.N.Y. Sept. 18, 2013) (a federal habeas court "may only review a state court's evidentiary ruling if it was so egregious that it rendered the

_____

[8]  *Latin*, "in these words."

16

Petitioner's trial fundamentally unfair, in violation of his constitutional right to due process"
(citations omitted)).  To show that an "erroneous admission of evidence [rose] to a deprivation of
due process under the Fourteenth Amendment," a petitioner must show that "the evidence in
question 'was sufficiently material to provide the basis for conviction or to remove a reasonable
doubt that would have existed on the record without it.'" Johnson v. Ross, 955 F.2d 178, 181
(2d Cir.1992) (quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir.1985)).

Here, the rulings at issue relate to the admission of the results of Petitioner's Alcosensor
test.  A defendant may "open [ ] the door" to otherwise excluded evidence and the decision of
whether to admit such evidence is within "the sound discretion of the trial court." People v.
Melendez, 55 N.Y.2d 445, 449 N.Y.S.2d 946, 434 N.E.2d 1324 (1982) (citations omitted).  The
trial court must evaluate whether "the evidence or argument said to open the door is incomplete
and misleading, and what if any otherwise inadmissible evidence is reasonably necessary to
correct the misleading impression." People v. Massie, 2 N.Y.3d 179, 184, 777 N.Y.S.2d 794,
809 N.E.2d 1102 (2004).

In this case, the trial court's rulings were reasonable and reflect an appropriate exercise of
the court's discretion.  The trial court ruled that defense counsel had opened the door to
testimony from Officer Stewart regarding the Alcosensor results only after defense counsel
informed the jury of the test in his opening and on cross examination of Stewart.  (270, 352, 370-
71).  Similarly, when defense counsel introduced a supporting deposition through Officer
Muendel that related to the Alcosensor test, the court warned that the results of the test would be
admissible if defense counsel continued such along this line.  (T. 470, 487).  Defense counsel
failed to heed the court's warning and continued to ask Muendel about the preliminary breath

test.  (T. 471).  When the prosecutor subsequently asked Muendel to state results on redirect, the court acted reasonably in overruling defense counsel's objection on the grounds that "[t]he door was opened."  (481-82).

Even if the court's evidentiary rulings were in error, moreover, Petitioner has not demonstrated that the error was so material as to have deprived him of his constitutional right to a fair trial.  The evidence supporting the jury's verdict was substantial, as it included testimony from multiple police witnesses as well as the driver of the sideswiped car and one of her passengers, who witnessed the accident.  Additionally, the trial court gave the jury the curative instruction that the Alcosensor test is not recognized scientifically as a reliable measure of blood alcohol content.  (T. 723-24).  This instruction mitigated the risk that the jury would consider the evidence of Petitioner's Alcosensor results for an improper purpose.  See Spencer v. State of Texas, 385 U.S. 554, 562, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967) (noting that a jury is expected to follow limiting instructions).  Thus, the testimony revealing the Alcosensor results, "viewed objectively [and] in light of the entire record before the jury" cannot be considered so substantial as to have violated Petitioner's due process rights.  Collins, 755 F.2d at 19.  Even if the trial court's ruling had been in error, the introduction of the Alcosensor evidence cannot be said to have formed "the basis for conviction" or to have "remove[d] a reasonable doubt that would have existed on the record without it."  Id.  Accordingly, to the extent that Petitioner presents an exhausted due process claim, I recommend that the claim be denied.

C.    **Unexhausted Claims: Claims One, Two, and Three**

Petitioner's remaining claims, set forth in grounds one through three of his habeas

18

petition, challenge the accuracy of the testimony presented at trial and dispute the verdict.[9] These claims are unexhausted, as they were not raised on appeal to the state court. Nevertheless, the claims may be "deemed exhausted" because they are now procedurally barred under state law. See St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004). Petitioner cannot return to state court to fully exhaust these claims because he has already made the one request for leave to appeal to which he is entitled. See N.Y. Ct. Rules § 500.20(a)(2).

Petitioner is also precluded from raising these claims in a collateral proceeding because they could have been raised on direct appeal to the Appellate Division. See N.Y. Crim. Proc. Law § 440.10(2)(c). Petitioner has not alleged that he is actually innocent or that the court's failure to consider the claims would result in a fundamental miscarriage of justice, and he has not claimed cause or prejudice.

In the alternative, even if the claims could not be deemed exhausted, Petitioner presents no coherent federal claim that is cognizable on habeas review, but rather simply takes issue with police testimony and various facts that were resolved against him at trial. These claims are untenable. See Underwood, 692 F.Supp. at 150. Furthermore, to the extent Petitioner argues that he was improperly denied grand jury minutes, that claim is not reviewable on habeas. Clarke v. Mazzuca, No. 00 Civ. 2871(WHP)(RLE), 2002 WL 1837367, at *6 (S.D.N.Y. Aug. 6, 2002) (dismissing habeas Petitioner's claim that the state court erroneously refused to disclose portions of the grand jury minutes because "in order for a federal habeas court to examine a

---

[9] These claims concern Officer Muendel's testimony that Petitioner drove the wrong way down a one way street, Officer Muendel and Officer Stewart's testimony that Petitioner refused a breathlyzer test, the absence of a video demonstrating Petitioner's intoxication, whether Petitioner crossed a double yellow line, and the overall question of whether Petitioner was intoxicated when he was arrested.

claim, the claim must be federal or constitutional in nature.  There is no federal or constitutional right to discovery in a state criminal proceeding.") (internal citations omitted).  Accordingly, the remainder of Petitioner's claims must be denied.

## IV. **CONCLUSION**

For the reasons set forth above, I conclude—and respectfully recommend that Your Honor should conclude—that the instant petition for a writ of habeas corpus should be denied in its entirety.  Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).[10]

Dated: December 29, 2015

White Plains, New York

Respectfully submitted,

Paul E. Davison, U.S.M.J.

_____

[10]     Copies of all unpublished opinions and decisions available only in electronic form cited herein have been mailed to Petitioner.  See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

**<u>NOTICE</u>**

Pursuant to 28 U.S.C. § 636(b)(1)(c), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from receipt of this Report to serve and file written objections to this Report and Recommendation.  If copies of this Report are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of this Report to file and serve written objections.  <u>See</u> Fed. R. Civ. P. 6(d).  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth Karas at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  <u>See</u> <u>Caidor v. Onondaga County</u>, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Kenneth Karas and not to the undersigned.

A copy of this Report and Recommendation has been mailed to:

Richard Martin
408 South 5 Avenue
Mount Vernon, NY 10550